IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| LUXOTTICA RETAIL NORTH AMERICA INC. d/b/a PEARLE VISION,<br><br>               Plaintiff,<br><br>   vs.<br><br>STEPHEN LENT<br>16 Perryfalls Place<br>Baltimore, MD 21236,<br><br>and<br><br>LENT & SCHULTZ, INC.,<br>a Maryland corporation,<br><br>SERVE:   Ronald G. Schultz<br>              8849 Shinning Oceans Way<br>              Columbia, MD 21045,<br><br>and<br><br>RONALD G. SCHULTZ<br>8849 Shinning Oceans Way<br>Columbia, MD 21045,<br><br>and<br><br>R. SCHULTZ VISION CARE, INC.,<br>a Maryland corporation,<br><br>SERVE:   Avrum M. Kowlasky<br>              101 S. Main Street, Suite 300<br>              Bel Air, Maryland 21014,<br><br>and<br><br>ERICK GRAY, t/a PEEPERSEYE.COM,<br>704 B North Rolling Road<br>Baltimore, MD 21228,<br><br>and | Civil Action No. 12-1458<br><br>**COMPLAINT** |

| |
|---|
| GRAY OPTOMETRISTS, P.A. t/a PEEPERS FAMILY EYE CARE, a Maryland professional association, <br><br> SERVE:   Erick Gray <br>           6635 Corina Court <br>           Columbia, MD 21044 <br><br>                       Defendants. |

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Luxottica Retail North America Inc. d/b/a Pearle Vision, successor-in-interest to Pearle Franchise Corporation ("PFC") and Pearle Vision, Inc. ("PVI") (collectively "Pearle Vision") sues Defendants Stephen Lent ("Lent"), Lent & Schultz, Inc. (the "Company"), Ronald G. Schultz ("Schultz"), R. Schultz Vision Care, Inc. ("Vision Care"), Erick Gray t/a Peeperseye.com ("Gray"), Gray Optometrists P.A. t/a Peepers Family Eye Care ("Peepers") (collectively "Defendants") and states:

1. This is an action to enjoin Defendants' unauthorized operation of a retail optical store in violation of restrictive covenants as well as for the unauthorized use of Pearle Vision's valuable trademarks and service marks, and for Lanham Act damages.  Additionally, this is an action for tortious interference against Defendants Gray and Peepers.

### I.    THE PARTIES

2. Plaintiff Pearle Vision is an Ohio corporation with its principal place of business in Mason, Ohio and is a citizen of Ohio only.

3. Defendants Company, Vision Care and Peepers are Maryland business entities with principal places of business in Maryland and their shareholders and members are residents of Maryland; accordingly, all are citizens of Maryland only. Defendants Lent, Schultz and Gray

2

are citizens and residents of Maryland. Defendants Vision Care, the Company, Schultz and Lent are sometimes referred as "Franchisees."

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This Court has also jurisdiction over this action based upon:

(a) Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1337, and 1338(a), for the claims arising out of Defendants' violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and;

(b) 28 U.S.C. § 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants' common law unfair competition and Defendants' breaches of contracts.

6. Venue is proper in the Northern District of Maryland pursuant to 28 U.S.C. § 1391 as Defendants have registered office, or reside in this district. All Defendant Franchisees (except Gary and Peepers) have agreed in writing that in any litigation to enforce the terms of the agreements between Pearle Vision and Defendants, Pearle Vision, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

7. Pearle Vision has engaged the undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between Pearle Vision and Defendants.

8. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

### III. THE PEARLE VISION MARKS

9. To identify the source, origin, and sponsorship of Pearle Vision's facilities, products and services, Pearle Vision has extensively employed, caused to be advertised and publicized throughout the United States certain distinctive symbols as trademarks and service marks (the "Pearle Vision Marks").

10. Pearle Vision was the first to adopt and use the Pearle Vision Marks as trademarks and service marks, and all right, title and interest to the Pearle Vision Marks and the design, decor and image of PEARLE VISION® stores remain vested solely in Pearle Vision.

11. Pearle Vision operates and franchises PEARLE VISION® Stores using the Pearle Vision Marks on signs, boards, posters, equipment, translights and other items, and in advertising to the public through television, radio and print media.

12. Set forth below is an abbreviated listing of the Pearle Vision Marks registered in the United States Patent and Trademark Office:

| Trademark: | Record No./ Sub Case: | Status / Symbol: | Application No./ Date: | Registration No./ Date: |
|---|---|---|---|---|
| CLEARLY DIFFERENT | 65430-0506/ | Registered 35, 44 | 77691913 16-Mar-2009 | 3794543 25-May-2010 |
| Design (Green Oval) | 65430-0013/ | Registered 42 | 73330057 28-Oct-1981 | 1257977 15-Nov-1983 |
| I HAVE SEEN | 65430-0489/ | Registered 35, 44 | 77243053 31-Jul-2007 | 3547686 16-Dec-2008 |
| NOBODY CARES FOR EYES MORE THAN PEARLE | 65430-0025/ | Registered 42 | 75/386066 06-Nov-1997 | 2330661 21-Mar-2000 |
| PEARLE | 65430-0007/ | Registered 42 | 73330055 28-Sep-1981 | 1228785 22-Feb-1983 |
| PEARLE EXPRESS | 65430-0053/ | Registered 42 | 74044360 30-Mar-1990 | 1634558 05-Feb-1991 |
| PEARLE VISION | 65430-0023/ | Registered | 75421424 | 2349286 |

4

| **Trademark:** | Record No./ Sub Case: | Status / Symbol: | Application No./ Date: | Registration No./ Date: |
|---|---|---|---|---|
| | | 35 (42) | 22-Jan-1998 | 16-May-2000 |
| PEARLE VISION | 65430-0504/ | Registered 3, 9 | 77691919 16-Mar-2009 | 3689264 29-Sep-2009 |
| PEARLE VISION CENTER | 65430-0054/ | Registered 42 | 74044359 30-Mar-1990 | 1633854 05-Feb-1991 |
| PEARLE VISION CENTER & DESIGN | 65430-0014/ | Registered 42 | 73099967 15-Sep-1976 | 1538542 09-May-1989 |
| PEARLE VISION EXPRESS | 65430-0006/ | Registered 42 | 73763243 14-Nov-1988 | 1622998 13-Nov-1990 |
| PEARLE VISION EXPRESS & DESIGN | 65430-0004/ | Registered 42 | 73763244 14-Nov-1988 | 1603022 19-Jun-1990 |
| PEARLE VISION (GREEN LOGO) | 65430-0499/ | Registered 35, 44 | 77380409 25-Jan-2008 | 3492222 26-Aug-2008 |
| PEARLE VISION (WHITE LOGO) | 65430-0498/ | Registered 35, 44 | 77380378 25-Jan-2008 | 3492219 26-Aug-2008 |
| PEARLETHIN | 65430-0485/ | Registered 9 | 77224719 09-Jul-2007 | 3606717 14-Apr-2009 |
| PEARLEVIEWS | 65430-0444/ | Registered 35 | 78788054 10-Jan-2006 | 3336740 13-Nov-2007 |
| PICK MY PAIR | 65430-0509/ | Registered 35, 44 | 77862435 02-Nov-2009 | 3986478 28-Jun-2011 |
| SEE THE CURE | 65430-0351/ | Registered 36, 42 | 76149670 18-Oct-2000 | 2753669 19-Aug-2003 |
| THE DIFFERENCE IS CLEAR | 65430-0508/ | Registered 42 | 74367856 15-Mar-1993 | 1803525 09-Nov-1993 |
| WE WANT YOU TO SEE MORE | 65430-0491/ | Registered 35, 44 | 77223499 06-Jul-2007 | 3544425 09-Dec-2008 |

13. The registrations of the Pearle Vision Marks are currently in full force and effect, and Pearle Vision has given notice to the public of the registration of the Pearle Vision Marks as provided in 15 U.S.C. § 1111.

5

14. Pursuant to franchise agreements between Pearle Vision and its franchisees, Pearle Vision grants its franchisees a limited license and authority to use and display the Pearle Vision Marks, but only in such manner, and at such locations and times, as are expressly authorized by Pearle Vision.  Pursuant to these franchise agreements, a franchisee is not authorized to use the Pearle Vision Marks after the expiration or termination of its franchise.  Such unauthorized use is expressly prohibited under the terms of all PEARLE VISION® franchise agreements, including Defendants' franchise agreements with Pearle Vision.

15. Pearle Vision's products bearing the Pearle Vision Marks are offered and sold in interstate commerce.

16. Pearle Vision and its franchisees have spent many millions of dollars in the United States and abroad advertising and promoting PEARLE VISION® stores, services and products.

17. The substantial investment made in the Pearle Vision Marks has resulted in valuable good will for the Pearle Vision Marks and for the stores, products and services bearing those marks.  Pearle Vision's products and services have met with popular approval and, as a result of Pearle Vision's extensive sales, advertising, promotion and publicity, the public is familiar with the Pearle Vision Marks.  The products and services associated with the Pearle Vision Marks are understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with Pearle Vision.

### IV.    THE PEARLE VISION SYSTEM

18. Pearle Vision has developed a comprehensive operating system for all PEARLE VISION® franchisees in order to protect the image of Pearle Vision and to ensure uniform, high quality standards.  The detailed specifications and procedures of the "Pearle Vision System" are set forth in Pearle Vision's Franchise Manual (the "Manual").

19. Every PEARLE VISION® franchisee is required by its franchise agreement to operate its franchise in accordance with the specifications and procedures contained in the Manual. The Manual sets forth in detail the mandatory Pearle Vision operating standards, specifications and procedures. In addition to these strict quality, service and other requirements, the Manual prescribes specified training procedures to ensure that these requirements are met. The Manual is a confidential Pearle Vision document which a franchisee is permitted to have only during the term of the franchise agreement.

20. Pearle Vision offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards, including training for various levels of personnel, as well as other regional and local instructional programs. This enables Pearle Vision to safeguard the integrity of PEARLE VISION® Stores, the Pearle Vision System and the Pearle Vision Marks.

21. Integral to Pearle Vision's compliance and assistance program are periodic inspections and consultations undertaken by Pearle Vision personnel specially trained to observe and advise in all areas of operating procedure. Pursuant to Pearle Vision's visitation process, action plans are issued after a store inspection is conducted. These action plans serve as a training opportunity for the franchisee and as a quality assurance process for Pearle Vision to ensure that critical quality, service and other standards are being met by the franchisee. Each PEARLE VISION® franchise agreement confers upon Pearle Vision the right to enter the store premises to perform this vital function.

22. As a result of its substantial expenditures of money and effort in developing and implementing the Pearle Vision System, Pearle Vision has established a high reputation and a positive image with the public as to the quality of products and services available at PEARLE

VISION® Stores, which reputation and image have been, and continue to be, valuable assets of Pearle Vision.  Pearle Vision strives to maintain that reputation through its careful selection of authorized franchise owners, facilities and locations and its careful supervision over the manner and quality of its services.

### V.     PEARLE VISION'S WRITTEN AGREEMENTS WITH DEFENDANTS' STORE #8259 AGREEMENT

23.     Defendant Company, Lent and Schultz owned and operated former PEARLE VISION® Store #8259 at 815 Goucher Boulevard, Towson, MD 21204 ("Store #8259"), using Pearle Vision's systems and names, including service marks and trademarks, in accordance with the terms and conditions of a Pearle Vision Franchise Agreement (the "#8259 Franchise Agreement").

24.     The #8259 Franchise Agreement provides that its effective date was February 28, 2007 with a term of five years.  The #8259 Franchise Agreement also contains a restrictive covenant which provides that for one year following expiration or termination of the #8259 Franchise Agreement, the Company would not, among other things, engage in any other retail optical business at or within three (3) miles of Store #8259.

25.     Pursuant to a Personal Guaranty (the "Guaranty"), Lent and Schultz unconditionally and irrevocably personally guaranteed the payment and performance of each and every obligation of the Company under the #8259 Franchise Agreement, as well as any other agreements between the Company and Pearle Vision and/or Pearle Vision's affiliates.

26.     Lent and Schultz also executed and delivered to Pearle Vision a Confidentiality/Covenant Not to Compete Agreement ("#8259 Non-Compete Agreement") whereby they unconditionally and irrevocably agreed that, among other things, they would not divert any business to competitors of Pearle Vision, and further agreed that for a period of one

8

year following the expiration of the #8259 Franchise Agreement, they would not directly or indirectly, within a 3 mile radius of Store #8259, engage or participate in any other business which offers or sells retail optical products or which engages in any of the activities of the franchisee contemplated by the #8259 Franchise Agreement.

### STORE #8178 AGREEMENT

27. Defendants Vision Care and Schultz owned and operated the former Pearle Vision Store #8178 at 704 B. North Rolling Road, Baltimore, MD 21224 ("Store #8178") (Store #8259 and Store #8178 are collectively referred to as the "Stores"), using Pearle Vision's systems and names, including service marks and trademarks, in accordance with the terms and conditions of a Pearle Vision Franchise Agreement (the "#8178 Franchise Agreement") (the #8259 Franchise Agreement and the #8178 Franchise Agreement are hereinafter collectively referred to as the "Franchise Agreements").

28. Additionally, Defendants Vision Care and Schultz also executed and delivered to Pearle Vision two Confidentiality/Covenant Not to Compete Agreements (collectively, the "8178 Non-Compete Agreements) (the #8259 Non-Compete Agreement and the #8178 Non-Compete Agreements are collectively referred to as the "Non-Compete Agreements"), whereby they unconditionally and irrevocably agreed that, among other things, they would not divert any business to competitors of Pearle Vision.

## VI. DEFENDANTS' OBLIGATIONS UNDER THE FRANCHISE AGREEMENTS

29. Under the terms of the Franchise Agreements, the Franchisee Defendants are obligated to make monthly payments to Pearle Vision for royalties, advertising and other fees in connection with the operation of the Stores. Specifically, the Franchise Agreements required Defendants to pay Pearle Vision royalties of 7.0% of monthly Gross Revenues for the preceding calendar month in return for the use of the Pearle Vision System and the Pearle Vision Marks.

30. Defendants are also obligated to pay Pearle Vision an advertising and marketing contribution of a certain percentage of monthly Gross Revenues and Base Gross Revenues for the preceding calendar month in return for advertising, marketing, brand management and merchandising expenditures made by Pearle Vision on behalf of the Pearle Vision System.

31. Defendants are also obligated to pay Pearle Vision for all merchandise purchased and received from Pearle Vision.

32. Defendants are also required to operate the Stores during the prescribed hours for the term of each respective franchise agreement.

### VII. FAILURE TO COMPLY WITH TERMINATION OR EXPIRATION OBLIGATIONS

33. In 2012, the 8178 Franchise Agreement expired and the 8259 Franchise Agreement was terminated for uncured monetary defaults. Franchisees chose not to comply with their obligations upon expiration or termination and took affirmative steps to convert their customer base to Gray and Peepers in violation of their Franchise Agreements.

34. The Franchisees transferred their retail purchase records, telephone numbers associated with the Pearle Vision system in telephone directories and inventory to Peepers and Gray and continue to operate, or allow Gray and Peepers to operate, a substantially similar optical business under the Peepers Family Eye Care tradename, using the Peeperseye.com website and domain name owned by Gray, which is now operated at the former premises of store 8259.

### B. Termination and Expiration Obligations

35. Upon termination or expiration of the Franchise Agreements, Franchisees were prohibited from, among other things, promoting themselves as either current or former Pearle

Vision franchisees, from using any of Pearle Vision's trade secrets, promotional materials, the Pearle Vision Marks or any other mark confusingly similar.

36. Defendant Franchisees were further required upon termination or expiration to immediately make such removals or changes at the Stores as Pearle Vision requested so as to effectively distinguish the Stores from their former appearance and from any other Pearle Vision store.

37. Further, Defendant Franchisees agreed to abide by the post-termination and post expiration contractual obligations contained in the Franchise Agreements.

38. In violation of their post-termination obligations, Defendant Franchisees have failed to, among other things, transfer telephone numbers and listings to Pearle Vision, and completely turn over records relating to the business. Instead, the Franchisees have continued the same business (under the Peepers Family Eye Care name) at the premises of former Store #8178 in violation of the #8178 Franchise Agreement's restrictive covenants and the Non-Compete Agreements, and are diverting Store #8178 customers to their new non-Pearle Vision store. In so doing, all Defendants in concert are infringing upon the Pearle Vision Marks and breaching their explicit obligations under the Franchise Agreements and Non-Compete Agreements.

39. Additionally, Schultz works at the premises of #8178 and the Franchisees' telephone numbers (410-296-8474 for store 8259 and 410-788-7133 for store #8178) which Franchisees were obligated to transfer to Pearle Vision now divert customers to Peepers, which Gray lists on the Peeperseye.com website.

### VIII. LIKELIHOOD OF CONSUMER CONFUSION AND DECEPTION

40. Defendants' use of the telephone numbers which are listed in directories as belonging to, or being associated with Pearle Vision Marks, name, symbols or slogans, and

11

associated with the former Pearle Vision locations is without Pearle Vision's license or consent, and has caused or is likely to cause mistake, confusion or deception in the minds of the public as to source, affiliation and sponsorship. Such impressions are calculated to and will have a material influence on customers' purchasing decisions, and will adversely affect the goodwill, reputation and appeal of Pearle Vision.

41.   Additionally, the Franchisees' involvement in the operation of a retail optical business at former Store #8178 will result in the loss of good will, loss of control of reputation and consumer confusion.

42.   By reason of the foregoing, Pearle Vision has suffered damages, in an amount presently unknown yet substantial. Pearle Vision no longer is the source or sponsor of Store #8178 and does not endorse the location, has not authorized Defendants to use the Pearle Vision telephone numbers to identify the terminated franchise facilities and has protested against such use.

43.   Pearle Vision will suffer serious, immediate, and irreparable harm if Defendants' willful infringement of the Pearle Vision Marks and violation of the restrictive covenants is not immediately enjoined. Pearle Vision's goodwill and reputation will suffer drastically by virtue of the public's identification of Pearle Vision with the closed Store #8259, and with the operation of a retail optical store at former Store #8178. The carefully nurtured image which Pearle Vision now enjoys will be irretrievably injured as a result.

44.   Consumer confusion as to the source or sponsorship of stores bearing the Pearle Vision Marks will be attended not only by an inevitable loss of product distinctiveness, image and goodwill, but will also cause a diversion of sales from Pearle Vision. The economic injury

to Pearle Vision resulting from such diversion is incalculable and, as such, is an additional source of irreparable harm.

### COUNT I — LANHAM ACT INFRINGEMENT
### (AGAINST ALL DEFENDANTS)

45.   Pearle Vision re-alleges the previous paragraphs above as if fully set forth herein.

46.   Defendants' acts constitute infringement of Pearle Vision's registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

### COUNT II — LANHAM ACT FALSE DESIGNATIONS
### (AGAINST ALL DEFENDANTS)

47.   Pearle Vision re-alleges the previous paragraphs above as if fully set forth herein.

48.   Defendants' acts at each store and usurpation of the telephone traffic constitute false designations of origin or affiliation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

### COUNT III — COMMON LAW TRADEMARK INFRINGEMENT
### (AGAINST ALL DEFENDANTS)

49.   Pearle Vision re-alleges the previous paragraph above as if fully set forth herein.

50.   Defendants' acts constitute unlawful trademark and service mark infringements under the common law.

### COUNT IV — COMMON LAW UNFAIR COMPETITION
### (AGAINST ALL DEFENDANTS)

51.   Pearle Vision re-alleges the previous paragraphs above as if fully set forth herein.

52.   Defendants' acts constitute unfair competition under the common law and under the Lanham Act.

### COUNT V — BREACH OF FRANCHISE AGREEMENTS
### (AGAINST FRANCHISEES)

53.   Pearle Vision re-alleges the previous paragraphs above as if fully set forth herein.

54. Franchisees have not (a) transferred the telephone numbers and customer records to plaintiff as demanded, (b) removed the Pearle Vision signage from store #8259 or paid the $64,000 in pre-termination receivables owed.

55. Additionally, Franchisees' failure to comply with the Franchise Agreement post expiration and restrictive covenants constitute additional breaches of the Franchise Agreements.

56. These breaches have directly and proximately caused damage to Pearle Vision.

### COUNT VI — BREACH OF NON-COMPETE AGREEMENTS (AGAINST ALL DEFENDANTS)

57. The former Franchisees unconditionally and irrevocably agreed that they would not divert any business to competitors of Pearle Vision, and further agreed that for a period of one year following the expiration or termination of the Franchise Agreements, they would not directly or indirectly, within a 3 mile radius of their former operations, engage or participate in any other business which offers or sells retail optical products or which engages in any of the activities of the franchisee contemplated by the Franchise Agreements.

58. The former Franchisees breached the Non-Compete Agreements by engaging and participating in the retail optical store that is now being operated out of former Store #8178 and by acting in concert with all other Defendants to violate the noncompete.

59. This breach has directly and proximately caused loss and damage to Pearle Vision.

60. All Defendants have acted in concert to violate the Non-Compete Agreements by concealing the fraudulent transfer of operating assets, refusing to transfer the telephone numbers and by continuing to have Schultz work at the former Pearle location.

### COUNT VI — TORTIOUS INTERFERENCE AGAINST GRAY AND PEEPERS

61. Pearle Vision re-alleges the previous paragraphs above as if fully set forth herein.

62. Defendants Gray and Peepers have tortiously interfered with the Pearle Vision Agreements, have diverted customers to the retail optical store that is being operated out of the premises of former Store #8178 and have no reasonable basis to excuse such conduct.

63. This conduct has directly and proximately caused loss and damage to Pearle Vision.

## DEMAND FOR ATTORNEYS' FEES AND COSTS

The Franchise Agreements, Non-Compete Agreements and Guaranty at issue in this litigation provide that the prevailing party is entitled to its attorneys' fees and costs. Pearle Vision hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

WHEREFORE, Plaintiff Luxottica Retail North America Inc. d/b/a Pearle Vision, successor-in-interest to Pearle Franchise Corporation and Pearle Vision, Inc. (collectively "Pearle Vision") demands judgment against Defendants:

1. For preliminary and permanent injunctions enjoining Defendants, and all persons acting on their behalf, in concert with, or under their control, from:

   (a) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Pearle Vision.

2. For preliminary and permanent injunctions directing Defendants, and all persons acting on Defendants' behalf, in concert with Defendants, or under Defendants' control, to:

   (a) account and pay over to Pearle Vision all gains, profits, and advantages derived by Defendants from their trademark and service mark infringement, breach of

15

contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law.

3. For money damages, lost profits, plus three times additional actual damages Pearle Vision has sustained by reason of Defendants' trademark and service mark infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

4. For compensatory and punitive damages because of the willful nature of Defendants' actions;

5. For pre judgment interest and Pearle Vision's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreements and, because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

6. For an order directing Defendants to cause the telephone numbers to be transferred to Plaintiff; for an order directing Defendants' within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

7. For an order enjoining Franchisees from engaging in any other business which produces, manufactures, distributes, offers or sells optical products, or products or services related thereto which are similar in any material respect to the Stores within a three-mile radius of the Stores for a period of one year from such date as this Court enters such an order;

8. For compensatory damages, lost profits, attorneys' fees and costs against Defendants due to their breaches of contract and tortious interference;

9. For all costs, disbursements, and expenses of this action; and

10. For all such other relief as this Court may deem just and proper.


DATED: May 14, 2012           Respectfully submitted,

                                                NIXON PEABODY LLP

                                                By:  _____/s/_____
                                                    Diana V. Vilmenay (Bar # 17583)
                                                    401 9th Street, Suite 900
                                                    Washington, D.C. 20004
                                                    Telephone:  (202) 585-8000
                                                    Fax:  (202) 585-8080
                                                    dvilmenay@nixonpeabody.com

                                                    Craig R. Tractenberg (*pro hac vice* requested)
                                                    437 Madison Avenue
                                                    New York, New York 10022-7001
                                                    Telephone: (212) 940-3722
                                                    Fax: (866) 852-2714
                                                    ctractenberg@nixonpeabody.com

                                                    Attorneys for Luxottica Retail North America, Inc. d/b/a Pearle Vision